UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAYRITTA BROWN, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>PALISADES INSURANCE COMPANY, *a New Jersey corporation*,<br><br>Defendant. | **CLASS ACTION COMPLAINT**<br><br>Case No. 5:22cv00008 (MAD/ATB)<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Mayritta Brown ("Plaintiff"), by and through undersigned counsel, brings this class action, individually and on behalf of all others similarly situated, against Palisades Insurance Company ("Defendant") and alleges as follows:

## INTRODUCTION

1. This class action lawsuit arises from Defendant's deceptive, fraudulent, and unfair scheme through which Defendant systematically undervalues total-loss vehicles in order to arbitrarily reduce the ultimate payment to insureds who make total loss claims.

2. In the event of a "total loss" to an insured vehicle—*i.e.*, where repair of the vehicle is impossible or uneconomical—Defendant's uniform insurance policies with Plaintiff and all putative Class members (defined below) promise to pay for the loss, limited to the actual cash value ("ACV") of the vehicle. Attached as **Exhibit A** is a copy of Plaintiff's Policy ("Policy").

3. Defendant skirts its straightforward contractual obligation by directing its third-party vendor to systematically reduce the total loss evaluations. Specifically, Defendant's third-party vendor determines the ACV of an insured total loss vehicle by comparing the for-sale price of "comparable vehicles" in the relevant market. *After* the vendor determines the price for

1

"comparable vehicles," however, Defendant instructs its vendor to apply an arbitrary, baseless, and illegal "projected sold adjustment" reduction to each comparable vehicle. This reduction artificially reduces the ACV calculation of the total-loss vehicle and, consequently, reduces the amount of Defendant's total loss payment to insureds.

4. Defendant's deceptive, fraudulent, and unfair scheme violates the New York General Business Law § 349, *et seq*., and constitutes a breach of contract and breach of the covenant of good faith and fair dealing.

5. As a result of Defendant's deceptive, fraudulent, and unfair scheme, Plaintiff did not receive the benefit of the bargain, and thus sustained actual damages.

6. By this action, Plaintiff, individually and on behalf of the Class, seeks damages and injunctive and declaratory relief.

## PARTIES

7. Plaintiff Mayritta Brown is and was domiciled in Peekskill, New York and was a New York citizen at all times relevant to this lawsuit.

8. Defendant is and was, at all relevant times to this lawsuit, a New Jersey company authorized to underwrite insurance in the State of New York, with its principal place of business being 581 Main Street, Suite 400, Woodbridge, NJ 07095.

## JURISDICTION AND VENUE

9. This Court has personal jurisdiction over Defendant because Defendant directs, markets, and provides its business activities throughout the State of New York, and makes its insurance services available to residents of New York. Further, this Court has personal jurisdiction over Defendant because Defendant's tortious conduct against Plaintiff occurred in substantial part within this District and because Defendant committed the same wrongful acts to other individuals

within this judicial District, such that some of Defendant's acts have occurred within this District, subjecting Defendant to jurisdiction here.

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because at least one member of the putative class, including Plaintiff, is a citizen of New York, and Defendant is a citizen of New Jersey, thus CAFA's minimal diversity requirement is met. Additionally, Plaintiff seeks an award of damages (including actual, compensatory, statutory, and punitive, as provided by law) and restitution to Plaintiff and the Class in an amount to be determined at trial, for each violation, which, when aggregated among a proposed class of potential thousands, exclusive of interests and costs, exceeds the $5,000,000 threshold for federal jurisdiction under the Class Action Fairness Act ("CAFA").

11. Venue is proper in this District pursuant to 28 U.S.C. §§1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction, and because a substantial part of the events giving rise to the claim occurred in this District, and because Plaintiff was injured in this District.

## FACTUAL ALLEGATIONS

**"Projected sold adjustment"**

12. When valuing total-loss automobile claims, insurance companies like Defendant use third party companies to determine the "market value" of an insured's totaled vehicle. The "market value" of the insureds total-loss vehicle serves as the baseline number for the total loss payment to an insured.

13. This is consistent with New York law, which requires insurers paying ACV on totaled vehicles to either directly replace the totaled vehicle with a comparable vehicle or to determine the "retail value" of the insured vehicle. N.Y. Comp. Codes R. & Regs. Tit. 11 §

216.7(c). If an insurer chooses to make a "cash settlement" rather than directly replacing the vehicle, the market value of the vehicle must be based on the "retail value" of the vehicle. *Id*. at 11 § 216.7(c)(1)(v).

14. To determine a totaled vehicle's retail market value, New York law allows insurance companies to rely on "computerized database[s]." *Id.* at 11 § 216.7(c)(1)(iii). When a "computerized database" is used to determine the "retail value" of a totaled vehicle, the "computerized database" is required to "produce statistically valid fair market values for a substantially similar vehicle, within the local market area." *Id*. The "computerized database" used must "produce values for at least 85 percent of all makes and models of private passenger automobiles… for the last 15 model years" and the quotation must "rely upon values derived from licensed dealers, which have minimum sales of 100 motor vehicles per year in the local market area… and be based upon the physical inventory of vehicles sold within the 90 days prior to the loss and vehicles with are available." *Id*. at §§ 216.7(c)(1)(iii)(a), (b). In other words, the average price of a number of recently or currently available comparable vehicles becomes the retail "market value" underlying the ACV payment Defendant makes to its insureds under the Policy.

15. In a blatant and unlawful effort to reduce its total-loss payments to insureds, Defendant, through its vendor, after the retail market value is determined, applies a deceptive and capricious "projected sold adjustment," in order to artificially lower the market value of the comparable vehicles and, thus, pay the Defendant an amount that is lower than required, in violation of the Policy and New York law.

16. Specifically, Defendant purports to calculate the value of total-loss vehicles via a third-party vendor, Mitchell, through a system called the Mitchell Vehicle Valuation Report ("Mitchell"). The Mitchell system identifies the list price of comparable vehicles sold or listed for

sale online. Mitchell then, at Defendant's directive, applies a deceptive and arbitrary "projected sold adjustment," which artificially reduces that "market value" of the comparable vehicles.

17. Upon information and belief, Defendant's "projected sold adjustment" is a blanket percentage reduction of the selling price of a comparable vehicle based on the listing price. Rather than basing their adjustment on any tangible features of the available vehicle which may relate to consumer negotiations, the "projected sold adjustment" is arbitrarily applied as a universal percentage reduction to any vehicle in a given price range. For example, and by way of illustration only, if a car is listed for sale at $10,000, the vehicle could be reduced by 7%. Now if an identical vehicle of the same make, model year and trim is listed at $15,000, the vehicle might be reduced by 10%, regardless of the fact that both vehicles shared the same make, model, year, and features. There is no rational explanation for why the two identical vehicles would be subject to such varied reductions in their selling price.

18. Defendant's "projected sold adjustment" is arbitrary and unsupportable. Without providing support or data, Defendant represents that the "projected sold adjustment" reflects some sort of average difference between a dealer list price and "what the dealer would be willing" to sell it for. *See* Ex. B at 12 ("Project Sold Adjustment – an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)."). However, an across-the-board 5-6% reduction on used vehicles' internet prices is not typical and does not reflect market realities, and neither New York Law nor the Policy permit Defendant to make this arbitrary deduction.

19. Indeed, Defendant applies the "projected sold adjustment" without contacting the identified dealerships or considering whether the online retailer ever discounts its vehicles. Notably, in applying an across-the-board, percentage-based "projected sold adjustment" reduction, Defendant failed to consider that most used car dealerships banned price negotiation by

implementing "no haggle" pricing[1] or that (as discovery will show), given certain market forces, even the few car dealers that might negotiate prices listed in-person on car lots do not negotiate the price listed online.

20. By applying an arbitrary and unsupported "projected sold adjustment" to every comparable vehicle, Defendant fails to provide documentation to ensure statistically valid local market area values in clear violation of N.Y. Comp. Codes R. & Regs. Tit. 11 § 216.7(c)(1)(iii).

21. Certainly, the arbitrary, capricious, and meretriciously labeled "projected sold adjustment" reduction cannot be a reflection of market realities given that, even accepting Defendant and its vendor's assertions at face value, it is based on national data, not market data.

22. Plaintiff does not contest Defendant's representations of the listed price of comparable vehicles. Plaintiff does not contest the value assigned to differences in trim, condition, mileage, packages, and equipment between comparable vehicles and the total-loss vehicle. Plaintiff solely contests that Defendant instructed Mitchell to apply an arbitrary, capricious, and invalid "projected sold adjustment" across-the-board.

23. Notably, and for reasons unknown, Defendant does not instruct Mitchell to apply a "projected sold adjustment" to comparable vehicles in all states in which it operates. Many other insurers who use Mitchell do not instruct Mitchell to apply "projected sold adjustments" to comparable vehicles.

**PLAINTIFF'S TOTAL LOSS EXPERIENCE**

24. Plaintiff owned a 2014 Chevrolet Traverse that was insured under a Policy issued by Defendant, which suffered a total loss on or around November 9, 2020.

---

[1] *See* https://www.carmax.com/about-carmax (last visited July 22, 2021) ("our 'no-haggle' prices transformed car buying and selling from a stressful, dreaded event into the honest, straightforward experience all people deserve.").

25. Plaintiff made a claim with Defendant for the total loss of the vehicle.

26. Defendant provided a total loss valuation to Plaintiff for the total loss claim. Defendant based its offer upon a valuation report obtained from Mitchell.

27. Defendant valued Plaintiff's total loss claim at $16,496.77 and paid Plaintiff that amount. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "projected sold adjustment" of approximately 5-6% to six of the seven comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-11, attached as **Exhibit B**.

## CLASS ACTION ALLEGATIONS

28. Plaintiff brings this action individually and as a class action pursuant to Federal Rule of Civil Procedure 23. The proposed Class is defined as follows:

> All New York citizens insured by Defendant who, from the earliest allowable time through the date of a class certification order, received a first-party total loss valuation and payment on an automobile total loss claim that included a "projected sold adjustment" or similar adjustment.

29. Excluded from the Class are Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Judge(s) and Court staff assigned to this case and their immediate family members. Plaintiff reserves the right to modify or amend the Class definition during the course of this litigation.

30. Class certification is appropriate because Plaintiff can prove the elements of her claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

31. **Numerosity.** The members of the Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes that there are

7

thousands of Class members, the precise number is unknown to Plaintiff, but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

32. **Commonality.** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    a. whether Defendant's practice of applying a "projected sold adjustment" when determining the market value of Class members' vehicles, and its failure to disclose same would deceive a reasonable consumer;

    b. whether Defendant's practice of applying a "projected sold adjustment" when determining the market value of Class members' vehicles would be considered material by a reasonable consumer;

    c. whether Defendant's conduct breached its contracts with Plaintiff and the other Class members;

    d. whether Defendant's conduct breached the covenant of good faith and fair dealing with Plaintiff and the other Class members;

    e. whether Plaintiff and the Class are entitled to injunctive relief; and

    f. whether Plaintiff and the Class are entitled to damages and the measure of damages owed to them.

33. **Typicality.** Plaintiff's claims are also typical of the other Class members' claims because Plaintiff and the other Class members were all similarly affected by Defendant's deceptive application of a downward "projected sold adjustment." Plaintiff's claims are based upon the same legal theories as those of the other Class members. Plaintiff and the other Class members sustained

damages as a direct and proximate result of the same wrongful practices in which Defendant engaged. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the other Class members.

34. **Adequacy of Representation.** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the other Class members whom they seek to represent, and Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

35. **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, such that it would be impracticable for the Class members to individually seek redress for Defendant's wrongful conduct. Even if the Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION

## VIOLATION OF NEW YORK CONSUMER PROTECTION ACT, N.Y. GEN. BUS. LAW § 349, *et seq.*

36. Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

37. Plaintiff brings this cause of action individually and on behalf of the Class.

38. The New York General Business Law ("New York GBL") prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state..." N.Y. Gen. Bus. Law § 349(a).

39. The New York Consolidated Laws on Insurance provides that the following are unfair claim settlement practices in the business of insurance: 1) "knowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue"; and 2) "not attempting in good faith to effectuate prompt, fair and equitable settlements of claims submitted in which liability has become reasonably clear." N.Y. Ins. Law §§ 2601(a)(1), (4).

40. As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the New York GBL by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "projected sold adjustment" to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's ACV payment to insureds, as detailed above.

41. Defendant's misrepresentations and omissions regarding its application of an arbitrary "projected sold adjustment" to comparable vehicles were made to Plaintiff and the Class members in a uniform manner.

42. Defendant's unfair or deceptive acts or practices, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about

Defendant's application of an arbitrary "projected sold adjustment" to comparable vehicles in order to reduce the amount of Defendant's ACV payment to its insureds.

43. The facts regarding Defendant's application of an arbitrary "projected sold adjustment" to comparable vehicles that Defendants knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

44. Plaintiff and the Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiff and the Class members did not, and could not, unravel Defendant's deception on their own.

45. Defendant had an ongoing duty to Plaintiff and the Class members to refrain from engaging in unfair or deceptive practices under the New York GBL in the course of its business. Specifically, Defendant owed Plaintiff and the Class members a duty to disclose all the material facts concerning its application of an arbitrary "projected sold adjustment" to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiff and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

46. Plaintiff and the Class members were aggrieved by Defendant's violations of the New York GBL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "projected sold adjustment" to comparable vehicles, including that the "projected sold adjustment"

is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's ACV payments under the Policy.

47. Plaintiff and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding "projected sold adjustment" its application of an arbitrary "projected sold adjustment" to comparable vehicles.

48. Defendant's violations of the New York GBL present a continuing risk to Plaintiff and the Class members.

49. Plaintiff and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the New York GBL and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York GBL.

## SECOND CAUSE OF ACTION

## BREACH OF CONTRACT

50. Plaintiff incorporates by reference each allegation set forth in paragraphs 1-35.

51. Plaintiff brings this claim individually and on behalf of the Class.

52. Plaintiff and each of the other Class members were insured under a policy issued by Defendant, as described herein.

53. Plaintiff's and each of the other Class members' insurance contracts are governed by New York law.

54. Plaintiff and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

55. Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiff and each of the other Class members the ACV of their totaled vehicles.

56. Defendant, however, failed to pay the ACV of Plaintiff's and the Class members' vehicles because Defendant applied an arbitrary and capricious "projected sold adjustment" to comparable vehicles in order to reduce their market value and, as a result, Defendant's ACV payment to insureds.

57. Thus, Defendant failed to pay Plaintiff and each of the other Class members the promised ACV of their total loss vehicles and thereby breached its contract with Plaintiff and each of the other Class members.

58. As a result of the contractual breaches, Plaintiff and each of the other Class members have been damaged and are entitled to damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

59. All conditions precedent have been satisfied.

## THIRD CAUSE OF ACTION

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

60. Plaintiff incorporates by reference each allegation set forth in paragraphs 1-35.

61. Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

62. Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one

of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

63. Under the Policy, Defendant had discretion to perform its obligations under the contract, including its obligation to determine the ACV of an insured's total loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its ACV payment to insureds, as alleged herein.

64. As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

    a. Intentionally applying "projected sold adjustments" to undervalue comparable vehicles, and, in turn, insureds' total loss vehicles;

    b. Failing to pay insureds the actual cash value of their total loss vehicles; Interpreting the terms and conditions of their insurance policies in an unreasonable manner, which is inconsistent with applicable law, solely in an effort to understate the retail market value of total loss vehicles and avoid paying insureds the actual cash value on their total loss claims; and

    c. Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

65. Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiff and the Class. Plaintiff's and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a "projected sold adjustment".

**FOURTH CAUSE OF ACTION**

## DECLARATORY JUDGMENT

66. Plaintiff incorporates by reference each allegation set forth in paragraphs 1-35.

67. A dispute between Plaintiff and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiff and the Class arising under that policy.

68. Plaintiff, individually and on behalf of the Class, seeks a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff seeks a declaration that in paying total loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of New York law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by "projected sold adjustments" that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

69. Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiff and members of the Class.

70. As a result of these breaches of contract, Plaintiff and the proposed Class members have been injured.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully seeks judgement in Plaintiff's favor and in favor of the Class as follows:

A. An Order certifying this action as a Class Action and appointing Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

B. An award of damages (including actual, compensatory, statutory, and punitive, as provided by law) and restitution to Plaintiff and the Class in an amount to be determined at trial, plus interest, in accordance with law;

C. Disgorgement of Defendants' profits;

D. Appropriate preliminary and/or final injunctive or equitable relief against the conduct of Defendants described herein;

E. An award of Plaintiff's and the Class' costs of suit, including reasonable attorneys' fees as provided by law; and

F. An award of such further and additional relief as is necessary to redress the harm caused by Defendants' unlawful conduct and as the Court may deem just and proper under the circumstances.

Dated: January 4, 2022

Respectfully submitted,

By: /s/ *Andrew Shamis*
Andrew J. Shamis, Esq. (NY #5195185)
**SHAMIS & GENTILE, P.A.**
14 NE First Avenue, Suite 705
Miami, Florida 33132
Telephone: 305-479-2299
ashamis@shamisgentile.com

Rachel Dapeer, Esq. (NY #4995130)
**DAPEER LAW, P.A.**
20900 NE 30th Ave, Suite 417
Aventura, Florida 33180
Telephone: 305-610-5223
rachel@dapeer.com

Scott Edelsberg, Esq. (*Pro Hac*

*Forthcoming*)
Christopher Gold, Esq. (*Pro Hac Forthcoming*)
**EDELSBERG LAW, PA**
20900 NE 30th Ave, Suite 417
Aventura, Florida 33180
Telephone:  305-975-3320
scott@edelsberglaw.com
chris@edelsberglaw.com

*Counsel for Plaintiff*
*and the Proposed Class*